*457 POSNER, Circuit Judge.
A company (trade name Cap N’ Cork) that owns retail liquor stores in the Fort Wayne area of northern Indiana brought this suit, joined by two consumers of wine who live in Indianapolis, to challenge the constitutionality of an Indiana state law that prevents Cap N’ Cork from shipping wine to its customers via a motor carrier, such as UPS. Ind.Code § 7.1-3-15-3(d). With an exception, explained below, that is inapplicable to Cap N’ Cork, the statute forbids deliveries other than by the seller of the wine or an employee of the seller— and Indianapolis is a 130-mile drive from Fort Wayne, well beyond Cap N’ Cork’s feasible delivery range.
The company challenges the state law on two grounds. The first is that it is inconsistent with, and therefore preempted by, a federal statute, the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1605-06, 7, enacted in 1994, that provides that a state “may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier,” 49 U.S.C. § 14501(c)(1), with the principal exception of laws concerned with safety. § 14501(c)(2)(A); City of Columbus v. Ours Garage & Wrecker Service, Inc., 536 U.S. 424, 441, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002); VRC LLC v. City of Dallas, 460 F.3d 607, 612-14 (5th Cir.2006).
Since everything in an open economy relates to everything else, the term “related to” cannot be interpreted literally, especially since the statute had a focused aim— to prevent states from nullifying the repeal, by the Motor Carrier Act of 1980, 94 Stat. 793, a statutory component of the deregulation movement, of the federal laws that had made truck transportation a heavily regulated industry, like the railroads and airlines, which were also being deregulated. Rowe v. New Hampshire Motor Transport Ass’n, 552 U.S. 364, 368, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008). Rowe read the 1994 law to forbid a state to require that a tobacco retailer deliver a tobacco product to a consumer only by a carrier that verified that the recipient was of legal age to consume tobacco; the state was attempting to regulate a service (delivery of tobacco products) provided by motor carriers. See also DiFiore v. American Airlines, Inc., 646 F.3d 81, 86-87 (1st Cir.2011).
The state law challenged in the present case does not regulate motor carriers, but it forbids liquor stores to use motor carriers to deliver wine (also beer and liquor, Ind.Code §§ 7.1-3-5-3(d), 7.1-3-10-7(c), products that Cap N’ Cork also sells, but for unexplained reasons the company doesn’t challenge the beer and liquor provisions), and the effect is to prohibit motor carriers from offering a service they’d like to offer. True, one major carrier, at least, is offering it in Indiana (see UPS, “Shipping Wine,” www.ups.com/wine (visited Nov. 28, 2011)), but only to wineries that have verified in person the age of the Indiana residents to whom they ship.
In a case challenging another Indiana regulation of wine, we said that “we know from Rowe ... that states cannot [consistently with the 1994 act] require interstate carriers to verify the recipients’ age.” Baude v. Heath, 538 F.3d 608, 613 (7th Cir.2008). But the Supreme Court had had no occasion in Rowe — a case about the delivery of tobacco products rather than of alcoholic beverages — to address, and did not address, the possible bearing on the Motor Carrier Act of section 2 of the Twenty-First Amendment, which states that “the transportation or importation into any State ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.” *458 Like all other states, Indiana forbids the sale of alcoholic beverages to anyone under the age of 21. The Twenty-First Amendment authorizes a state to enforce that prohibition, but not, the Supreme Court has held, by means that seriously impair the federal government’s constitutional powers. E.g., Granholm v. Heald, 544 U.S. 460, 486, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 712, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984). And those powers include the power to regulate transportation by interstate motor carriers.
In seeking to resolve the tension between the Twenty-First Amendment and the Supremacy Clause, which in the absence of the amendment would invalidate a state law that conflicted with a federal statute, the Supreme Court has thought it important that the “core ... power” conferred on the states by section 2 of the Twenty-First Amendment is the power of “regulating the times, places, and manner under which liquor may be imported and sold.” Capital Cities Cable, Inc. v. Crisp, supra, 467 U.S. at 716, 104 S.Ct. 2694. Indiana’s prohibition of the delivery of wine by motor carriers is within that power, because it is an aspect of “regulating the ... manner under which [wine] may be ... sold.” One might have thought that since the Twenty-First Amendment postdates the Supremacy Clause, anything within the core power of the amendment (or within the scope of the amendment, period — forget cores) must trump an inconsistent federal statute. But while the Supreme Court will accord “a strong presumption of validity” to regulations within the core, “strong” is not “conclusive.” North Dakota v. United States, 495 U.S. 423, 432, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (plurality opinion); cf. Capital Cities Cable, Inc. v. Crisp, supra, 467 U.S. at 716, 104 S.Ct. 2694. “Even though [the challenged statute] represents the exercise of a core state power pursuant to the Twenty-first Amendment, a balancing of state and federal interests must be conducted.” U.S. Airways, Inc. v. O’Donnell, 627 F.3d 1318, 1330 (10th Cir.2010).
So whereas ordinarily a federal law preempts a conflicting state law, if the state law regulates alcoholic beverages the court must balance the federal and state interests; for just as the federal interests derive constitutional protection from the supremacy clause, the state interests derive constitutional protection from the Twenty-First Amendment, unlike the usual case in which federal preemption is asserted. And if the state interests are within the core powers that the Twenty-First Amendment confers on the states, there is a thumb on the scale — that is the “strong presumption” of validity.
We’re about to see the strong presumption carry the day for the challenged Indiana statute, and that makes us reluctant to get ahead of the Court and declare the “presumption against preemption” that the Court has lately applied in eases, unaffected by the Twenty-First Amendment, in which Congress has legislated in a field traditionally occupied by the states, see, e.g., Altria Group, Inc. v. Good, 555 U.S. 70, 77, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008), conclusive in the field of state regulation of alcoholic beverages, on the ground that the amendment makes it a field of law emphatically occupied (since 1933) by the states.
Indiana requires drivers employed by liquor retailers to be trained in and tested on Indiana’s alcohol laws and also trained in the recognition of phony IDs. See Ind. Code §§ 7.1 — 3—1.5—1, -6, -13, 7.1-3-18-9. It is because the state doesn’t require *459 similar training of motor carriers’ drivers that those carriers aren’t permitted to deliver alcoholic beverages to a consumer unless, prior to shipping, the consumer’s age is personally verified by an employee of the winery from which the consumer is buying. Ind.Code § 7.1-3-26-9(l)(A); Baude v. Heath, supra, 538 F.3d at 612. Motor carriers are required to obtain “carriers’ alcoholic permits” in order to be allowed to transport alcohol on public highways in Indiana, but their drivers are not required to obtain permits and there is no training requirement either. See Ind. Code §§ 7.1-3-18-1 et seq. Allowing motor carriers to deliver wine could therefore undermine the state’s efforts to prevent underage drinking, the state having decided not unreasonably that requiring face-to-face age verification by someone who has passed a state-certified training course should reduce the prevalence of that drinking.
The fact that Indiana allows direct deliveries by carriers to wine consumers, where the seller has previously verified the consumer’s age in person, but not other such deliveries, might seem to undermine the state’s rationale, since there is no training requirement for employees of wineries. But the statute imposes other requirements on the wineries designed to assure accurate age verification, see Ind.Code § 7.1-3-26-9, and it would hardly be feasible for Indiana (and would indeed be severely discriminatory) to require that employees of out-of-state wineries undergo training in Indiana before being permitted to ship to an Indiana consumer.
We might have a different case if a motor carrier were asking the state to allow it to opt into the same training requirement imposed on drivers employed by retailers of wine. That would both weaken the attempt to justify the challenged law on the basis of the Twenty-First Amendment (which so far as relates to this case merely allows a state to take reasonable measures for preventing underage drinking), and discriminate without apparent justification against motor carriers. But as far as appears, no motor carrier has sought such equal treatment with the retailers or been denied it and sued. No motor carrier is a party to this case.
So Cap N’ Cork’s federal-preemption argument fails, but the company has another string to its bow: it argues that the Indiana law unduly burdens interstate commerce, and so violates the commerce clause of Article I of the Constitution. Not, however, because Indiana may be increasing the cost of wine produced elsewhere; that consequence is inherent in the central power conferred on the states by the Twenty-First Amendment — the power to limit or even forbid the consumption of wine within its borders — and overrides the competing interests held to be latent in the commerce clause because otherwise the amendment would be a dead letter. But the amendment does not authorize states to discriminate in favor of local producers — in an extreme case, to forbid the sale in the state of wine produced elsewhere while placing no comparable limits on the sale of wine by wineries located in the state. As the Supreme Court explained in Granholm v. Heald, supra, 544 U.S. at 484-85, 125 S.Ct. 1885, “the aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use. The Amendment did not give States the authority to pass nonuniform laws in order to discriminate against out-of-state goods, a privilege they had not enjoyed at any earlier time.” See also Healy v. Beer Institute, Inc., 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).
*460 The Indiana law does not discriminate expressly against out-of-state producers. Both local and out-of-state wineries can deliver to consumers, and by motor carriers if they want, provided the consumer’s age has been verified at the winery in person. And both local and out-of-state wineries are bound by the rule that delivery of wine sold by a retailer must be made by the retailer’s own employees. But does the absence of express discrimination end the constitutional inquiry?
It is typical in cases in which alcoholic beverage regulations are challenged under the commerce clause to evaluate the challenge before asking whether the Twenty-First Amendment blocks the challenge. For if the challenge would fail even if there were no such amendment, there is nothing to be gained by trying to determine whether, if it would succeed under that assumption, in the actual case the amendment would blunt it. We follow that approach in the balance of this opinion.
The Supreme Court has said that “ ‘when a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor instate economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.’ ” Granholm v. Heald, supra, 544 U.S. at 487, 125 S.Ct. 1885, quoting Brown-For-man Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). But while “without further inquiry” may be fine in a case in which the statute is expressly discriminatory, it doesn’t follow that if the effect is implicit, indirect, incidental, or unintended, no further consideration is necessary, even apart from the difficulty of distinguishing between explicit and implicit, direct and indirect.
In Browrir-Forman we read that “when ... a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State’s interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits. Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).” 476 U.S. at 579, 106 S.Ct. 2080; see also Wiesmueller v. Kosobucki, 571 F.3d 699, 703 (7th Cir.2009). And Brownr-Forman was a case involving state regulation of alcoholic beverages, as was Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 270, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), which holds that “examination of the State’s purpose in this case is sufficient to demonstrate the State’s lack of entitlement to a more flexible approach permitting inquiry into the balance between local benefits and the burden on interstate commerce. See Pike v. Bruce Church, Inc.” Thus, as in Granholm (which cited Bacchus approvingly), the Court in Bacchus didn’t balance because it didn’t need to, but neither did it indicate that it would refuse to do so if the effect on commerce were indirect. Nor has any appellate court so held. Our Baude decision analyzed Indiana’s alcohol laws under Pike’s balancing test, and invalidated one of them, Baude v. Heath, supra, 538 F.3d at 612, and other courts have analyzed similar laws similarly. Of all cases that cite both Pike and Granholm or Pike and the Twenty-First Amendment, we find none that rejects that approach. Besides Baude, see Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 15 (1st Cir.2007); see also Freeman v. Corzine, 629 F.3d 146, 164 (3d Cir.2010); Black Star Farms LLC v. Oliver, 600 F.3d 1225, 1230-31 (9th Cir.2010); Cherry Hill Vineyards, LLC v. Lilly, 553 F.3d 423, 432 (6th Cir.2008).
The Pike standard is intended for cases in which a statute “regulates even-handedly ... and its effects on interstate com *461 meree are only incidental.” Pike v. Bruce Church, Inc., supra, 397 U.S. at 142, 90 S.Ct. 844. One might as an original matter suppose that the Twenty-First Amendment insulated merely incidental effects on interstate commerce in alcoholic beverages from constitutional challenges based on the commerce clause. But again we needn’t get ahead of the Supreme Court in the matter. So incidental are the effects of interstate commerce in this case — in fact, so negligible — that even if the Twenty-First Amendment were inapplicable, Cap N’ Cork would lose its commerce clause challenge.
It is true that the farther away from the consumer a winery is, the harder it is to induce consumers to come for face-to-face age verification at the winery, and most U.S. wineries are on the West Coast, more than 2000 miles from Indiana. But we ruled in Baude that this is not unlawful discrimination, given the state’s interest (which incidentally would exist even if there were no Twenty-First Amendment, though it would be more vulnerable to constitutional challenge) in preventing the sale of alcoholic beverages to minors. See also Wine Country Gift Baskets.com v. Steen, 612 F.3d 809, 819-20 (5th Cir.2010); Black Star Farms LLC v. Oliver, supra, 600 F.3d at 1234-35; Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 36-39 (1st Cir.2007); but cf. Cherry Hill Vineyards, LLC v. Lilly, supra, 553 F.3d at 432-33. (We note later that the Lilly case is distinguishable.)
This case might seem different because of the position in which out-of-state wineries are placed that ship only small quantities of wine into Indiana. The state has decreed, as it is authorized to do by the Twenty-First Amendment, see Granholm v. Heald, supra, 544 U.S. at 489, 125 S.Ct. 1885; Baude v. Heath, supra, 538 F.3d at 612; Wine Country Gift Baskets.com v. Steen, supra, 612 F.3d at 818-19, that any winery that wants to sell its wine through a retailer rather than directly to the consumer must sell the wine to a wholesaler, for resale to the retailer, for resale to the consumer. Indiana wholesalers won’t buy small quantities of wine because they can’t obtain enough revenue from reselling small quantities to cover their costs. But fulfillment services pool orders for such wines and consign the ordered wines in bulk to wholesalers. The wholesalers can’t deliver the wine to consumers, because doing so would circumvent Indiana’s three-tier distribution system (winery-wholesaler-retailer), so the retailer with whom the consumer placed the order picks up the wine at the wholesaler’s warehouse and delivers it by its own employees to the consumer, who pays the retailer (or the fulfillment service), who pays the wholesaler, who pays the winery. The regulatory scheme is the same for all wineries that sell in or into Indiana, regardless of where they’re located.
Apparently Cap N’ Cork is one of only two retail liquor companies in Indiana (and together the two own only a few dozen of the state’s thousand or so liquor stores) that pick up from wholesalers wine provided to the wholesalers by fulfillment services and deliver the wine to the retailer’s customers. All of Cap N’ Cork’s 15 stores are in the Fort Wayne area, and all the stores of the other company, which appears to be Payless Liquors, see www. payless-liquors.com (visited Nov. 28, 2011), are in the Indianapolis area. (Given Pay-less, it’s odd that the two individual plaintiffs live in Indianapolis, rather than in a part of Indiana in which there is no wine fulfillment service.) A consumer who lives outside the Fort Wayne area and has not been age-verified by a winery and must therefore buy from a retailer cannot buy through Cap N’ Cork, because it will not deliver to a consumer outside that area. *462 No consumers who haven’t been age-verified by wineries are permitted to buy wine produced by wineries that either do not produce in Indiana or do not ship into the state quantities large enough to induce wholesalers to stock their wine, unless the consumers live in or very near either Fort Wayne or Indianapolis — the only areas served by fulfillment services.
Local.wineries, being more proximate to Indiana consumers than most out-of-state wineries, have a natural advantage over the latter by virtue of the face-to-face identification condition of being allowed to ship directly to consumers. But that as we said is a lawful advantage. And the fulfillment services enable Indiana wholesalers to stock wine sold by even the smallest wineries. The fact that retailers in certain parts of the state do not offer delivery of wine supplied to wholesalers by fulfillment services suggests a lack of demand, other than in Fort Wayne or Indianapolis, for such wine, rather than anything to do with the challenged state law.
The case comes down to a complaint that state law is preventing Cap N’ Cork from enlarging its sales area to encompass parts of Indiana remote from Fort Wayne. If true that is an effect on intrastate commerce, not interstate commerce. No effect on interstate commerce has been shown, in contrast to the factual showing of effect on interstate commerce that persuaded the Sixth Circuit in Cherry Hill Vineyards, LLC v. Lilly, supra, 553 F.3d at 432-33, to invalidate a law similar to the one upheld in Baude. The absence of even an incidental effect on interstate commerce excuses us from having to wrestle with the continued applicability of the Pike standard to state laws that while they discriminate incidentally against interstate commerce are at the same time within the Twenty-First Amendment’s gravitational field.
Affirmed.